**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Denise McPherson, | No. CV-23-08107-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Denise McPherson's appeal from the Commissioner of the Social Security Administration's ("SSA") final decision denying social security disability benefits. (Doc. 1). The appeal is fully briefed (Docs. 10, 16, 17), and the Court now rules.

**I.   BACKGROUND**

The issues presented in this appeal are:

1. Whether the Administrative Law Judge ("ALJ") failed to give clear and convincing evidence to reject Plaintiff's symptom testimony.
2. Whether the ALJ supported her finding that Plaintiff's vision impairments did not equal a listing under 2.02, 2.03, or 2.04 with substantial evidence.
3. Whether the ALJ supported her decision with substantial evidence.

(Doc. 10 at 5).[1]

---

[1] The Court has reordered and reworded Plaintiff's issues to better facilitate discussion.

### A. Factual Overview

Plaintiff was fifty-six years old on her alleged disability onset date of February 20, 2016. (Doc. 10 at 2). She graduated high school and reports past work as a caregiver, concessions seller, crisis driver, housekeeper, and mentor. (Doc. 16 at 3). On May 23, 2016, Plaintiff filed her application for disability insurance benefits under Title II and Title XVI of the Social Security Act ("the Act"). (Doc. 10 at 2). Plaintiff alleged that she suffered from headaches, total vision impairment, primary open-angle glaucoma, plateau iris syndrome, adhesions and disruptions of pupillary membranes, acute and chronic open-angle glaucoma, pain in and around her eye, rubeosis iridis, phacolytic glaucoma, nuclear sclerosis, a total or mature senile cataract, and glaucoma associated with vascular disorders of her eye. (*Id.*) After administrative review, the SSA denied Plaintiff's application. (Doc. 16 at 2). However, on judicial review, the Court ordered remand to the agency. (*Id.* at 3). In accordance with the Court's Order, the SSA Appeals Council remanded the matter back to an ALJ for a new hearing. (*Id.*) Plaintiff appeared via telephone in front of a new ALJ on November 30, 2022. (Doc. 6-10 at 45). The ALJ issued an unfavorable decision on December 20, 2022. (*Id.* at 57). In her decision, the ALJ found that based on Plaintiff's May 23, 2016, social security application and Plaintiff's October 25, 2018, social security application, Plaintiff has not been disabled—as defined in the Social Security Act—from February 20, 2016, through the date of the decision. (*Id.*) The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted that decision as the SSA's final decision. (Doc. 16 at 3). Plaintiff then sought review in this Court. (Doc. 1).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her

previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," e.g., doing "significant physical or mental activities;" and (2) "gainful," e.g., usually done "for pay or profit." 20 C.F.R. § 416.972(a)(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability to do physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At step four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv),

404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to step five in the sequential evaluation process.

At step five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

Here, at step one, the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since February 20, 2016, the alleged onset date." (Doc. 6-10 at 48).

At step two, the ALJ determined the following impairments are "severe": headaches, glaucoma, and a prosthetic left eye. (*Id.*) The ALJ found that Plaintiff's severe impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28." (*Id.*) The ALJ also considered Plaintiff's hyperlipidemia diagnosis and determined that the medical record fails to support a finding that it has caused more than a minimal limitation in Plaintiff's ability to perform basic work activities, and thus is considered non-severe. (*Id.*)

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> The claimant can never climb ladders/ropes/scaffolds. The claimant can work with occasional concentrated exposure to non-weather related extreme cold, non-weather-related extreme heat, non-weather[-]related wetness, and non-weather[-]related humidity. The claimant can work with occasional exposure to excessive loud noise, excessive vibration, occasional concentrated exposure to pulmonary irritants, such as

>fumes/odors/dust/gases, and occasional concentrated exposure to poorly ventilated areas. The claimant can work with no exposure to dangerous moving machinery or unprotected heights. The claimant can perform no work involving occupational driving. The claimant can perform tasks that do not require precise depth perception like threading a needle and can have only occasional exposure to direct sunlight in the work environment.

(*Id.* at 50).

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as a hospital housekeeper, reasoning that "[t]his work does not require the performance of work-related activities precluded by the [Plaintiff]'s residual functioning capacity." (*Id.* at 55).

At step five, as an alternative to Plaintiff returning to past relevant work, the ALJ determined that Plaintiff could make a successful adjustment to other work. (*Id.* at 56). In making this determination, the ALJ consulted a vocational expert because Plaintiff's "ability to perform work at all exertional levels has been compromised by non-exertional limitations." (*Id.*) The vocational expert testified that given all the factors of Plaintiff's age, education, work experience, and RFC, she would be able to perform the requirements of representative occupations such as laundry laborer, industrial cleaner, and kitchen helper. (*Id.* at 57). Accordingly, the ALJ found Plaintiff has not been under a disability—as defined in the Social Security Act—from February 20, 2016, through the date of the decision. (*Id.*)

## II. LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.  DISCUSSION

Plaintiff raises three claims of error in the ALJ's decision: (1) the ALJ improperly discounted Plaintiff's symptom testimony; (2) The ALJ did not support her finding that Plaintiff's vision impairments did not equal a listing under 2.02, 2.03, or 2.04 with substantial evidence; and (3) the ALJ did not support her decision with substantial evidence.

### A.    Plaintiff's Symptom Testimony

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making

specific findings supported by the record that provide clear and convincing reasons to explain her credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)); *Lingenfelter*, 504 F.3d at 1036. An adverse credibility finding is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

In assessing credibility, the ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (citation omitted). If the ALJ relies on these factors, and her reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Regarding Plaintiff's symptom testimony, the ALJ concluded that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Doc. 6-10 at 51). Plaintiff asserts that the ALJ discounted Plaintiff's symptom testimony using "boilerplate" language without specific reference to clear and convincing reasons supported by substantial evidence. However, the Court's examination of the ALJ's analysis does not support Plaintiff's argument.

As to Plaintiff's alleged blindness, the ALJ states:

[W]hile the claimant has no vision in the left eye, her right eye vision is fairly normal (1F, 3F-21F). In 2016, the claimant is diagnosed with neovascular glaucoma in the left eye and acute angle closure in the right eye (1F/10, 39; 2F/2; 3F/16). She scores a fifteen (15) on the Glasgow Coma Scale which is within normal limits (1F/9). Initial treatment includes eye drops and Avastin injections, albeit with little benefit per the claimant's report (1F/3, 4, 12:

3F/22; 11F 41). As a result of her eye impairment, she underwent laser surgery of the right eye in June 2016, followed by additional Avastin injections (3F/25, 34, 37; 4F/2). During an October 2016 consultative eye exam, the claimant was noted to have 20/50 visual acuity (distance) in the right eye and 20/100 visual acuity (near) without correction (6F/3). The claimant's corrected vision in the right eye is 20/70 near and 20/30-1 for distance (Id).

. . . .

In March 2019, the claimant reports an achy pressure sensation in the right eye that began one month prior (21F/1). She reports eye irritation and tearing (Id). An assessment at the time shows the claimant has 20/80 vision, the claimant's OCT is normal, and her IOP was good (21F/4). During a physical consultative exam later that month, the claimant is noted to have 20/50 right eye vision, 20/200 left eye vision, and 20/50 vision in both eyes (20F/2). The claimant's right eye extraocular movements were intact, cranial nerves are intact, and oropharynx is clear (20F/3). The examiner noted the claimant's right eye has quiet conjunctiva and the pupil is round and reactive (20F/3). Further, an exam showed the claimant walked with a normal gait and could navigate the office (20F/2). She can stand on one leg independently and heel/toe walk (20F/2). She exhibits normal coordination testing and a normal motor exam (20F/3). Indeed, she did not need to hold onto walls or stumble in an unfamiliar environment, despite alleging legal blindness.

. . . .

In conjunction with the above-noted findings, the claimant also has retained abilities. Despite her reports of severe vision issues and/or headaches, she indicates that she remains independent with personal care such as dressing, bathing, and feeding, and she completes most household chores (22E/4; 22F/2). Although the claimant testifies that she tries to complete chores at night due to sunlight irritation, the claimant walks, uses public transportation, goes out alone, and shops in stores (22E/7; Hearing Record). In a function report, the claimant indicates she cares for her dog with the help of her son (22E/3). While the claimant often reports pain associated with both her headaches and visual impairments, she says she needs no reminders for personal care or taking medication or going places, she can prepare daily meals, and reports no issues getting along with others (22E/5-6, 10, 12). The claimant says she can follow spoken and written instructions well with no reference to deficits as a result of her impairment related symptoms (22E/12). The claimant's retained abilities further support the residual functional capacity.

(*Id.* at 51–53). The ALJ discusses, at length, medical evidence that undermines Plaintiff's symptom testimony of legal blindness as well as Plaintiff's own reported daily activities being at odds with her testimony. The ALJ makes specific findings that give clear and convincing reason for rejecting Plaintiff's testimony in part. Further, the ALJ supports these reasons with substantial evidence by giving specific references to the record.

As for Plaintiff's alleged disabling headaches, the ALJ stated:

> The claimant reports facial pain and photophobia as a result of her headaches (1F/31, 39, 60). An exam confirms tenderness to palpation around the right ear as well as extreme light sensitivity with noted erythematous of the right eye (1F/33, 57). However, despite the claimant's symptoms, she remains cooperative, alert, oriented, obeys commands, and exhibits normal speech throughout March 2016 examinations (1F/39, 60). No cognitive or functional deficits are noted (1F/61).

(*Id.* at 51). There is robust evidence supporting the ALJ's determination that Plaintiff's headaches are not as debilitating as she alleges. The ALJ properly pointed to inconsistencies in Plaintiff's reports of her debilitation and Plaintiff's ability to engage in normal daily activities without significant debilitation from her ailment. The ALJ finishes her analysis by stating:

> the residual functional capacity takes into account the totality of the record by finding the claimant has postural and environmental limitations. These limitations account for the claimant's impairments, including her vision with history of injections, surgery, and laser treatment(s), difficulty being in sunlight, reported inability to drive, and reported pain from her vision and headache impairments (1F/31, 39, 60; 3F/34; 12F/1, 6; 15F/6; 16F/3; 21F/1). However, even when evaluating the combination of the claimant's impairments, the record fails to support a greater degree of limitation. Specifically, there is nothing in the record to support the claimant is legally blind. In fact, right eye exams are generally within normal limits (11F/19; 22F/3). Despite the claimant's testimony regarding dizziness or balance issues, the record shows the claimant generally denies these symptoms during doctor appointments (7F/2). Further, exams consistently show the claimant exhibits a normal gait, normal coordination, normal motor activity, and she has normal neurological findings (7F/3-4; 20F/2; 22F/3). There is no evidence of emergent care due to falls or the claimant's migraines. Indeed, the record does not show significant concern for headaches, including intense treatment such as nerve blocks. She testified she avoids sunlight and takes over the counter medication. Finally, exams consistently show normal

>   musculoskeletal, extremity, and neurological findings, including strength, which fail to support the claimant's reports of being only able to lift ten (10) pounds due to her condition (7F/3; 20F/2-3; 22F/3).

(*Id.* at 53). This final statement summarizes the ALJ's clear and convincing reasons for rejecting the degree of debilitation alleged by Plaintiff. The ALJ specifically addresses each alleged disabling impairment and supports her analysis with citations to the record verified by the Court. The Court finds that the ALJ gave clear and convincing reasons supported by substantial evidence to reject Plaintiff's symptom testimony in part.

### B. Plaintiff's Vision Impairments

Plaintiff next challenges the ALJ finding that Plaintiff's vision impairments did not meet a listing under 2.02, 2.03, or 2.04. (Doc. 10 at 11). Plaintiff appears to argue that the ALJ erred because Plaintiff meets the criteria for a per se disabling impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. To meet the listing requirements, a claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). An impairment is "medically equivalent" to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

Regarding a listing under 2.02, Plaintiff points to no evidence in the record that supports the notion that the vision in her right eye was 20/200 or worse, and the ALJ cites to multiple points in the record that show her better eye after best correction is greater than 20/200. (*See* Doc. 6-10 at 48).

Regarding a listing under 2.03, Plaintiff again cites no evidence to refute the ALJ's finding that "[t]here is no evidence in the record that meets the criteria in listing 2.03. (19F; 20F/2; 22F/1–3)." (*Id.* at 49). The exhibits cited by the ALJ show that Plaintiff had a normal confrontation visual field test in her right eye and an examination that showed no visual field abnormalities. (AR 593, 936).

Finally, under 2.04, Plaintiff uses an outlier consultative examination's visual acuity impairment value combined with an assumed visual field impairment value to argue that her visual impairment value would be over the threshold of 1.0. However, the ALJ cited

evidence showing that Plaintiff had no visual field abnormalities, and there were multiple other examinations showing her best corrected vision would be 20/30 to 20/80 which does not meet the threshold for a listing under 2.04. (*See* AR 423, 549, 599, 608, 935). The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews*, 53 F.3d at 1039 (citing *Magallanes*, 881 F.2d at 750); *Gallant*, 753 F.2d at 1453). The Court finds there was substantial evidence to support the ALJ's finding that Plaintiff's vision impairments did not meet a listing under 2.02, 2.03, or 2.04.

### C. Substantial Evidence

In her final argument, as best the Court can determine, Plaintiff appears to argue that the ALJ's determination that Plaintiff's medical records and symptom testimony did not support finding her disabled under the Act was not supported by substantial evidence. (Doc. 10 at 5–10). The substantial evidence standard is a general standard of review for social security disability cases appealed to district court, and the Court considers the record in its entirety "weighing both the evidence that supports evidence that detracts from the [ALJ's] conclusion." *Berryhill*, 874 F.3d at 654 (quoting *Garrison*, 759 F.3d at 1009). Plaintiff's generalized argument that the ALJ erred by not supporting her decision with substantial evidence relies, in a large part, on a supposition that the ALJ and this Court accept her symptom testimony in whole. However, the Court has considered Plaintiff's symptom testimony and found that substantial evidence supports the ALJ's discounting of said testimony. Accordingly, Plaintiff's argument fails.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

///

///

///

1    **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment
2 accordingly.
3    Dated this 22nd day of April, 2024.

_____
James A. Teilborg
Senior United States District Judge